IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN PATENT DEVELOPMENT CORPORATION, LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 07-605-LPS |
| v. | ) ) ) | |
| MOVIELINK, LLC, et al., | ) ) ) | REDACTED PUBLIC VERSION |
| Defendants. | ) | |

**DECLARATION OF SCOTT W. BREEDLOVE IN SUPPORT OF DEFENDANTS' MOTION FOR AN EXCEPTIONAL CASE FINDING UNDER 35 U.S.C. § 285 AND FOR <u>AN AWARD OF ATTORNEYS' FEES</u>**

I, Scott W. Breedlove, declare:

1. I am a partner at the law firm of Vinson & Elkins LLP in Dallas, Texas, counsel for Defendants Movielink, LLC and Blockbuster Inc. in this case. I am a member of the State Bar of Texas and the Bars of the Northern, Southern, Eastern, and Western Districts of Texas. I have been admitted pro hac vice to practice before this Court in this case. I have personal knowledge of the matters stated in this declaration and could competently testify to those matters if called as a witness. I make this declaration in support of the Defendants' Motion for an Exceptional Case Finding Under 35 U.S.C. § 285 and for an Award of Attorneys' Fees.

2. I have been assigned to this case since its inception and was actively involved in discovery and all other aspects of the case. APDC filed its complaint on October 2, 2007, alleging infringement by Movielink, LLC of U.S. Patent 5,400,402 ("the '402 patent"). The assets of Movielink had been purchased by Blockbuster less than two months before the complaint was filed. The complaint accused a movie download service that Movielink had launched nearly five years earlier, in 2002. Attached hereto as Exhibit 1 is a true and correct copy of an online CBS news article dated November 11, 2002 and printed from the Internet at the URL *http://www.cbsnews.com/stories/2002/11/11/tech/main528917.shtml* on January 23, 2008. I understand this article to be representative of the publicity surrounding the launch of the Movielink service. The article at Exhibit 1 states that the Movielink service used file formats and copy protection solutions associated with media players from Microsoft and RealNetworks.

3. On December 5, 2007, Movielink filed its Answer and Counterclaims in response to APDC's complaint. In its counterclaims, Movielink stated its understanding of some of the requirements imposed by the claims of the '402 Patent, including that "[e]ach claim of the '402 patent requires the same digital data stream that transmits the video product from the central

station to the user site to also include the data establishing a limit (hereinafter, 'limiting data') for authorized viewing of the product."

4. On December 20, 2007, APDC filed its answer to Movielink's counterclaim, including a statement that APDC was "without knowledge or information sufficient to form a belief" about the requirements of the '402 patent claims. On December 27, 2007, I sent a letter to Thad J. Bracegirdle of Reed Smith LLP, counsel for APDC, addressing Rule 11 of the Federal Rules of Civil Procedure in the context of APDC's statement that it had not formed a belief about certain requirements of the '402 patent claims. A true and correct copy of this letter is attached hereto as Exhibit 2.

5. APDC did not comply with my request to amend its reply to Movielink's counterclaim to affirmatively admit or deny Movielink's allegations as to fundamental requirements of the '402 patent claims. Instead, Reed Smith LLP attorney Mark Wasserman sent a letter to me dated January 3, 2008 reiterating that APDC did not have knowledge or information sufficient to form a belief about what its patent claims required. A true and correct copy of this letter is attached hereto as Exhibit 3.

6. In APDC's responses served on January 22, 2008 to Movielink's first set of interrogatories, APDC included a claim chart describing its understanding of the operation of an accused "Movielink system." A true and correct copy of APDC's interrogatory responses with attached claim chart is attached hereto as Exhibit 4. Each of the '402 patent claims that APDC asserted against Movielink (claims 1 and 2) includes a step of transmitting a digital data stream from a central station to a user site, where the digital data stream contains a video product and data establishing either a "limit" or a "time period" for authorized viewing of the video product.

In its description of the allegedly infringing conduct by Movielink for each of these claims, APDC stated in its chart:

> In the Movielink system, a data file containing an encoded movie or other audiovisual work is transmitted from a server to the customer user's computer.
> In addition, a data file containing an encoded usage rule is also transmitted from a server to the customer's computer. The usage rule sets a limit on the amount of time the video product can be viewed.

APDC's claim chart did not allege that the Movielink server from which the movie was transmitted was the same as the server from which the "usage rule" was transmitted, which is consistent with APDC already knowing that the Movielink service transmitted a movie and the license to view the movie from separate servers. Thus, APDC did *not* allege that the movie and usage rule were transmitted in the same digital data stream.

7. Movielink continued to try to ascertain APDC's basis for accusing Movielink of infringement. On April 25, 2008, Movielink sent requests for admission to APDC, including requests addressing (1) when APDC knew that the Movielink service used separate servers to transmit a video product and associated limiting data, (2) whether APDC had formed a belief at various times as to whether the Movielink service used separate servers for transmission of the video product and limiting data, and (3) whether certain limitations applied to the '402 patent claims. On May 27, 2008, APDC served objections in which it refused to answer any of these requests for admission. A true and correct copy of APDC's objections is attached hereto as Exhibit 5. Also on May 27, 2008, APDC served objections refusing to respond to any of Movielink's second set of interrogatories, including an interrogatory asking for a description of APDC's understanding at various times of the relationship between Movielink's servers for movies and its servers for usage rules. A true and correct copy of APDC's objections is attached hereto as Exhibit 6.

8. Meanwhile, on February 8, 2008, Movielink had supplemented its responses to APDC's first set of interrogatories to state that Movielink did not transmit and had not ever transmitted in the same data stream both a video product and data establishing limits for viewing the video product. A true and correct copy of Movielink's Supplemental Responses to Plaintiff's First Set of Interrogatories is attached hereto as Exhibit 7.

9. The parties briefed their claim construction positions beginning on August 28, 2008, and the Court held its claim construction hearing on October 2, 2008. In its briefing, APDC urged the Court not to consider the prosecution history of the '402 patent, and presented to the Court an alleged claim construction expert who testified that she had not reviewed the prosecution history. Initial expert reports in support of infringement and invalidity were exchanged by the parties on Dec. 12, 2008. APDC's infringement expert Bruce McNair testified that he did not review the prosecution history of the '402 patent and did not consider Movielink's proposed claim constructions in preparing his report. The claim charts included in McNair's report point to expiration date and time stamp information as the claimed "data establishing a limit." Movielink's invalidity and noninfringement expert Joseph Konstan addressed the prosecution history and both parties' proposed claim constructions in his report opining that the '402 patent is invalid and his rebuttal report opining that Movielink did not infringe the patent.

10. Between February 27, 2009 and March 23, 2009 the parties fully briefed motions by Movielink and APDC for summary judgment of non-infringement and infringement, respectively. In its summary judgment briefing, APDC argued that there was no dispute between the parties as to how Movielink's downloadable movie rental system operates, and that the Microsoft license used with Movielink downloads was the claimed "data establishing a limit" on authorized viewing. On March 27, 2009, the Court issued its claim construction opinion, which

construed the claimed "digital data stream" to include both the video product and limiting data, as Movielink had proposed.

11. In the wake of the claim construction opinion, APDC submitted a new infringement expert report and the parties briefed new summary judgment motions, as APDC had allegedly not considered Movielink's proposed claim constructions. APDC's new expert report included a new infringement and claim construction theory in which ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ After this second infringement report from APDC's expert, a second deposition of the expert, and a second round of summary judgment briefing, the Court issued an order on July 1, 2009 resolving the new claim construction dispute in favor of Movielink and granting summary judgment of non-infringement to Movielink. At the time the Court granted summary judgment to Movielink, the parties had submitted an agreed proposed pretrial order and the scheduled trial date was less than one month away.

12. In April 2009, the Court had allowed APDC to amend its pleadings to add Blockbuster Inc. as a defendant to the extent that Blockbuster was accused of infringement through the Movielink product in suit. On July 30, 2010, the Court applied its Summary Judgment ruling to Blockbuster, and directed entry of a final judgment. The Court entered a final judgment in this matter on August 18, 2010 pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, staying Movielink's invalidity counterclaim pending appeal.

13. I attach as Exhibit 8 a true and correct copy of excerpts from the book WINDOWS MEDIA 9 SERIES BY EXAMPLE, by Nels Johnson. This 2003 book discusses Movielink's use of Windows Media 9 Digital Rights Management on page 113 and the general operation of Windows Media 9 licensing on pages 114-116.

14. I attach as Exhibit 9 a redacted copy of the invoices that Vinson & Elkins LLP sent to Blockbuster Inc. during the period from October 2007 through August 2010 for legal fees and expenses incurred in this action. The invoices at Exhibit 9 have been redacted for preservation of privilege; Movielink and Blockbuster are willing to submit unredacted invoices for *in camera* review if preferred by the Court. I have reviewed these invoices, and they are correct to the best of my knowledge, information, and belief.

15. I attach as Exhibit 10 a spreadsheet showing the total attorneys' fees and total expenses incurred in this case through August 16, 2010, broken down by month. The amounts shown in Exhibit 10 are correct to the best of my knowledge, information, and belief, based on the invoices at Exhibit 9. Significant additional attorneys' fees have been incurred since August 16, 2010, primarily related to the attorneys' fees motion.

16. As further explanation of the fees incurred by Vinson & Elkins LLP, I provide the following summary of the roles of the attorneys from this firm who worked more than 20 hours on this case, based on my experience in working on the case:

a. I, Scott Breedlove, am a partner with a background in electrical engineering and more than 15 years of litigation experience. I have been the lead attorney for Defendants Movielink and Blockbuster throughout the course of the case. My role has been to supervise and participate in all aspects of the case, including briefing, discovery, and communications with our client and with opposing counsel. I also handled all appearances before the Court, was responsible for much of the written discovery, and took Mr. Garfinkle's deposition in the case, among other roles. My billing rate for Movielink and Blockbuster ranged from ▇▇ to ▇▇ per hour over the course of the litigation. Through August 16, 2010 I have spent ▇▇ hours on this matter, for $280,306.25 in total fees.

 b. Gentry C. McLean is an associate with a background in electrical engineering and 3 years of patent prosecution experience in addition to nearly 5 years of patent litigation experience. Her primary roles in the case included working with experts to manage preparation of Movielink's non-infringement and invalidity expert reports, handling depositions of APDC's infringement and validity experts, and preparing initial drafts of all summary judgment briefing. Dr. McLean's billing rate for Movielink and Blockbuster has ranged from ▮ to ▮ per hour over the course of her participation in the litigation. Through August 16, 2010 she has spent ▮ hours on this matter, for a total of $235,932.50 in fees.

 c. Andrew E. Jackson is an associate with a background in business finance and nearly 4 years of litigation experience. His primary roles in the case included working with the damages expert to manage preparation of Movielink's damages expert report, handling the deposition of APDC's damages expert, preparing initial drafts of briefing on various procedural motions, and initial drafting and revision of the draft pretrial order. Mr. Jackson's billing rate for Movielink and Blockbuster has ranged from ▮ to ▮ per hour over the course of his participation in the case. Through August 16, 2010 he has spent ▮ hours on this matter, for a total of $149,968.75 in fees.

 d. David J. Tobin is an associate with an electronic materials background and nearly 3 years of litigation experience. His primary roles in the case included initial non-infringement, invalidity, and claim construction analysis, and initial drafting of claim construction briefing. Mr. Tobin's billing rate for Movielink and Blockbuster ranged from ▮ to ▮ per hour over the course of his participation in the case. Through August 16, 2010 he spent ▮ hours on this matter, for a total of $41,827.50 in fees.

e. Alyson N. Gregory is a former associate who had one year of litigation experience at the time of her involvement in this matter during late 2007 and early 2008. Her primary roles in the case included managing various discovery and document production issues. Ms. Gregory's billing rate for Movielink and Blockbuster ranged from ▇ to ▇ per hour over the course of her participation in the case. Through August 16, 2010 she spent ▇ hours on this matter, for a total of $21,747.50 in fees.

f. Penelope Nicholson is a partner with over 20 years of experience in the Appellate practice at Vinson & Elkins LLP. She became involved in this case as it neared trial, and her roles included advising on trial preparation issues and preparation of the motion to enter judgment. Ms. Nicholson's billing rate for Movielink and Blockbuster was ▇ per hour over the course of her participation in the case. Through August 16, 2010 she spent ▇ hours on this matter, for a total of $14,175 in fees.

17. I attach as Exhibit 11 true and correct copies of excerpts from the 2009 Report of the Economic Survey by the American Intellectual Property Law Association (AIPLA). The excerpts provided show average overall patent litigation costs, as well as ranges of billing rates for attorneys based on experience.

18. I am familiar with the fees generally charged for patent litigation work, and it is my experience that patent litigation attorneys operate in many jurisdictions, including the District of Delaware. In view of the typical billing rates for intellectual property work, the particular circumstances of this case, and the experience and skills of the attorneys involved, I believe that the hourly billing rates charged by Vinson & Elkins LLP attorneys were reasonable and customary and that the fees charged by Vinson & Elkins LLP were reasonable and customary and were necessarily incurred in connection with the case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed this 31st day of August, 2010 in Tyler, Texas.

_____
Scott W. Breedlove

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**BY E-MAIL:**

Kathleen A. Murphy
Reed Smith LLP
1201 N. Market Street - Suite 1500
Wilmington, Delaware  19801

**BY E-MAIL:**

Mark W. Wasserman
Matthew R. Sheldon
Reed Smith LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042

/s/ Sarah R. Stafford
Sarah R. Stafford (#5234)

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**BY E-MAIL:**

Kathleen A. Murphy
Reed Smith LLP
1201 N. Market Street - Suite 1500
Wilmington, Delaware 19801

**BY E-MAIL:**

Mark W. Wasserman
Matthew R. Sheldon
Reed Smith LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042

/s/ Sarah R. Stafford
Sarah R. Stafford (#5234)

RLF1 3604768v. 1